Could you, before you start, my understanding is that the Sierra Club will take 8 minutes, is that right? Your Honor, I believe CBO has the statement of notes. Okay, the statement of notes. But I'm trying to get to the second round. You did say that the Sierra Club is 8 minutes and that the DHA is taking 12? Okay. Let's proceed. Thank you, Your Honor. Good morning, and may it please the Court. I am Paul Stevey, Special Assistant Attorney General for the State of North Dakota, representing the State of North Dakota and its two State Appellants before the Court today, with 8 counts of table for Assistant Attorney General for the State of Texas and the State of Nevada. I'd like to reserve 7 minutes of my time, please, for rebuttal. All right. Watch the clock and I'll see if I can help you. Thank you. The District Court below abused its discretion by approving a consent decree that, contrary to mandatory Clean Air Act requirements, grants forth 6 years additional time and supports in the statute for EPA to complete the nationwide designations for the National Humane Air Quality Standard for sulfur dioxide. How does the consent decree affect your clients? It affects states because the Clean Air Act is based upon a cooperative federalism mechanism in the entire statute, and that is the... What's going to happen to the State of North Dakota after this consent decree? If there is a consent decree, what happens to the State of North Dakota? The State of North Dakota, for example, like many of the other states, continues to wait for a designation. Okay, why don't you go get rid of mandamus? Does it prevent you from going and getting rid of mandamus? You're not bound by the consent decree in any way, are you? We are bound because we're a party. What are you bound by? We're a granted intervention in the District Court. If you are not granted an intervention on a substantive claim, are you? You're not a party to the consent decree. We're not a party to the consent decree. Okay, so why is the District Court not a party to the consent decree? So, I see you are against the state's view that you are prevented from going and getting, for example, maybe even a relief, a rid of mandamus. Can you go back to North Dakota and go get rid of mandamus against EPA? Or go to D.C. and get rid of mandamus? Our original action against EPA for failure to perform its discretionary duty in the statute was brought into the U.S. District Court for the District of Columbia. And you stayed? And did we actually hear? It was stayed, and the reason it was stayed, Judge, is because we filed a jurisdictional notification of intent to sue letter, I think, two weeks behind the Sarah Club's filing of theirs. And so, this, the action in front of Judge Houston, was the first in time. So, what are you prevented from doing in the District Court in North Dakota? So, if you affirm this, then presumably the District Court in North Dakota is now free to act, and that may be either dismissing the case or doing something else. Are you barred from bringing a rid of mandamus in the District Court in North Dakota? Well, we're subject to challenging EPA, and EPA has the defense that it's subject to a nationwide consent decree of nationwide influence. My difficulty is that the way that the stay order read, it said it would stay pending this District Court action. Subject to any party asking for the stay to be lifted. But, you have never asked for the stay to be lifted for any reason, even after the consent decree was issued. Is that correct? That's correct. I intend to ask the other side the same series of questions, because it looks to me that one way of reading this consent decree is that this is a non-sual agreement by the Sarah Club and NRDC that has been agreed not to sue EPA for the next three years while EPA figures this out. I don't see how that would prevent you from pursuing your rid of mandamus. I have no view as to whether you could be successful or not at this point. But, if that's all this is, is a non-sual agreement by Sarah Club and NRDC not to sue EPA for another three years in this matter, then what are the things barred from doing? So, give me something really concrete that tells you, look, if you went to the District Court of North Dakota, the District Court there would say, sorry, we can't help you. There's a consent decree. It's all for you. At heart, judges, the problem is this consent decree defines and establishes an entirely new framework that governs EPA's conduct and is fully subject to change by agreement between the Sarah Club and EPA. Does it do anything other than the timing? Substantively? Formally? Formally? It establishes the consent decree. In addition to being entered in it without our consent, the consent decree violates the plain language of the Clean Air Act. It gives us statute mandates, Section 704.07 mandates EPA to designate on Classified Level 1 of 3 thankful speech as you can, and it's describing him as a scientist. I can't ask the question, you know, many more times. I keep asking it. What is it that you are prevented from doing? If you object to that, if you think that the Sarah Club and the NRDC got away with something or the EPA got away with something, what prevents you from going into District Court in a friendly form? No, I don't know. I have a designation actually by the EPA. Yeah, great. So if you think that the Act requires EPA to designate something immediately, not in three years, but now, and the default provision is Classified Level 3, that third category, then why don't you go into that as I'm sure that the Sarah Club and the NRDC might have something to say about that. EPA surely will have something to say about it, at least you're arguing about the merits of the law. I understand. The problem is that if we do that, then the consent decree, the legality of the consent decree is never addressed. It would only be with respect to MNDMS 4, or, for example, the North Dakota District. I'm confident the other states deployed in this. I suspect our sister states. They're all part of it. They're all pages of the North Dakota Action as well. Some states might not, but we should have EPA classify them for anything. I don't know. All of our states want and believe they're entitled to the designations that the governors from those respective states submitted in adjournment. You have a non-trivial argument adjourned. I'd like to have EPA do that and do that immediately and not get an additional six years that may be something to your argument. But the consent decree seems to me like it's a non-single agreement, and if it's a non-single agreement, I don't see why you're barred from going back to North Dakota. Well, perhaps we may do that, but the problem is we were here before the court today because we were parties in the district court below and in the district court. You weren't parties. You were interveners but not with a separate claim, correct? You were there to be able to be in the court but not to have a separate claim. You never did file a claim of intervention on a substantive claim. In order to intervene, we pointed out the law of the circuit with respect to FRCP 24C and that it's a technical requirement in the circuit's long-constituted provision to be a notice to the court of the intervener's claims. And with respect to North Dakota and its sister states, we have very clearly made the judges aware that we have the action pending in North Dakota and that our interest on intervention, which the court recognized, is we're granting certain adjustments to the Sierra Club on liability and underperforming on discretionary duty. In North Dakota and the sister states, you had interests in being entitled to designations mandated by the statute. Well, can you predict that it comes to another level that we need to explore with you and also with the Sierra Club and the EPA? And that is, in your view, would a court have the authority under the Clean Air Act to actually order the EPA to issue certain designations, certain designations as opposed to issuing designations? I think the clear answer is in this circuit, as well as the Supreme Court, that the court cannot substitute its judgment for an expert agency and that is absolutely not what we are asking this court to do. And we ask this court to do two things. One, vacate the consent decree because it's patently inconsistent with the Clean Air Act. It establishes a framework that no one can find in the law that Congress enacted. Congress was very explicit in the mechanism for the state and then the federal rule and the limitations of the time frame on that statute. Could you be a little more clear? So, is this to cut to the chase? Is your objection there a time frame objection? It's an issue of forcing EPA to come to the decision and approving a consent decree that gives them fourth and three times the original mail to Congress. I mean, it's... We've had a number of cases here involving various pesticides and other cases where EPA isn't doing what it's supposed to in terms of proceeding under mandatory requirements. But once they've busted the deadline, the court can't go back. And so then you see court orders ordering them to do certain things. Sure. In this case, it's very... And why is that different than what we have here? It's different because of the precision of the schedule. And the precision is the mechanism. That is, if at the time frame in which EPA is no later than it says in the statute, it's just respectable. But in no case later than the language of the 7407, it says EPA has three choices, deem it non-deem it or unclassifiable if they don't know. And if it's in the end of the time frame they don't know, they have to do the unclassifiable. That's in the instance of the remedies contained in the statute. And all we're asking this court to do is to vacate the consent decree because it's totally excessive and ultra-obvious from the statute. And the court or EPA can come to a decision. But that decision has to be left to EPA. And we respect that. And if we don't like what they come to as a decision, we have a right under Linear Act Section 307 to challenge that information. But EPA cannot have the time period allowed under the consent decree, which Congress said what that time period is, allowing it or not. Well, that actually begs the question because, as I said, the difficulty is not just in your situation, but in many situations, the EPA or other agencies, sometimes the FDA, they don't do what they're supposed to do at that certain time period. I understand. And so at that point, the court has ordered them to do certain things within a certain time period because they can't technically comply with the statute, since they already are out of compliance. And so what I'm going to face some trouble here is understanding why the court can't then set a deadline for them to comply with the… Substantive court should certainly can. And we're not… Isn't that what they did here? They didn't. Because what Judge Hilston approved in the consent decree was two additional periods of time beyond what the statute required. And that is literally not reasonable. What's reasonable is what the court, under the circumstances with the EPA's consideration, as well as ours as parties. It's not reasonable, though, to give the agency six years on the statute. Six years plus three years for… We're narrowing the dispute. It's not that the district court or the consent decree, they couldn't provide some new deadlines. Your complaint then is the deadlines should not have been approved in terms of how long before, because that's unreasonable. That's correct. You're correct. That's correct. I see I'm closing in on my seven minutes. I don't mean to cut the court short, but I'll reserve the rest for tomorrow. Okay. Thank you. Good morning, Your Honors. I'm David Dutcher from the Department of Justice here on behalf of EPA. The underlying merits issue in this case, as the court has identified, is whether EPA missed the Interactive Club deadline. And indeed, Sierra Club sued us. We admitted liability, and we started to talk to parties about settlement. The settlement that we reached with Sierra Club sets a feasible deadline for EPA to carry out the duty that it missed. It allows EPA to make designations based on current high-quality data. And in respect to the regulatory context, before you get into your argument, there's been a lot of questions asked of the opposing attorneys as to whether or not they're properly here. What's the position of the Department of Justice as to whether or not they're standing on the part of the appellants before our court? Our view is that they have a right to intervene. We do not oppose permissive intervention below. That is, that it would be pursuant to Section 7604 of the Act, which allows any person, quote, person, close quote, to come to the attention of the administrator if they've missed a deadline or otherwise a drug ban. Right, and the seats have a 7604 claim in North Dakota, as we have recognized. And this is Sierra Club's Section 7604 claim here. And we agree they have the right to present their objections. They have the right to be heard. They have the right to appeal. And that's why we're here today. So you have no problem at all with their standing or their right to appeal or to be in this setting? No, but I think that the court should look, in particular, at Local 93 v. Cleveland, which is a situation very similar to here. The Supreme Court recognized the intervener's right to be heard and to object and to appeal, but said settlement is not something that interveners can block simply because they don't like the settlement. The question for the district court is? No, they didn't say they didn't like the settlement. They said it was a violation of the statute. Yes. So there is a way of complying with the statute without this increase. Just comply with the statute. Call them unclassified and get on with the work. Well, what's actually your clause? I don't think there actually is a way for us to comply with the statute. We missed the deadline. Oh, I know. I know. But you can go back and say, the rest are unclassified. The administrator can do that. Yeah, the administrator can do that because I don't think the administrator is going to be there to say that it lacks adequate data to pay for classification. That was the point. If they don't have the adequate data, they would just say it's unclassified so they can get on with the job. It's a work between the federal and the state group. This is what they decided to do. I don't see what the problem is with just bringing them business. Why the agency just can't say, with this as far as we go, the rest is unclassified, we'll get to it as we can. Sure, let me answer that with two points. The first is that an unclassifiable designation as a legal matter doesn't impose any obligations on state sources that are different from the non-classified data at all. So from EPA's perspective, the only thing that doing an immediate unclassifiable designation accomplishes is wasting a lot of the agency's time and resources when it's looking down the road to be able to do a designation with better data. If it's unclassified, like we've done before, it can be classified. All I'm suggesting is I don't understand why the administrator just can't say, we don't have time to do the rest, it's unclassified, we'll get to it, we'll classify it as we can. Sure. That brings me to my second point, which is understanding where this falls in the context and story of the provocation, or the revision of the SB-20X in 2010. EPA recognized at that time that the number of monitoring networks nationwide was declining and that the monitoring networks that are in place were not really well positioned to measure one-hour max declines near major sources. And so EPA at that time was looking at defining ways to measure containment and non-containment. The states participated in that process, and actually one of the reasons that EPA missed the deadlines here is because the states were putting pressure on EPA not to make an immediate designation based on computer modeling, but rather to establish the process where the states could participate and provide the data that they thought would be appropriate. And that's where the data requirements fall from here. Because, I mean, EPA, I think, will be able to offer lots of good reasons for why it didn't want to do that, why it didn't go back to Congress, which is going to make states realize the deadline. I mean, what's the use of having the deadlines if they don't mean anything? I don't think that it was necessary for EPA to go back to Congress. We're not trying to interpret our way around a deadline. We're going to definitely change. You recognize that we have missed the deadline. Of course you're trying to get a deadline to change. Absolutely you did. You just bargained for it. You signed the agreement and asked it to your judgment. Absolutely you did. So you bargained for an agreement with Sierra Club. Right. But they did not sue us. Okay. For our misdemeanor. So back to my question to counsel for North Dakota. Is this just a non-sue agreement with NRDC and Sierra Club? And can North Dakota still pursue a rhythm and damas in District 4 in North Dakota? North Dakota can go back to the state of North Dakota, can go back to the District 4 in North Dakota and obtain similar relief. I'm not taking a position on either here on whether some of their arguments may be precluded by what the District 4 and this board are going to decide. Okay. What would be precluded? Well, for example, the question of whether this consent decree is fair and reasonable and it exists in the act, I think certainly would be precluded. We are in a case in which we could all be open query whether that issue would be squirrelly before the District 4. If they go into North Dakota with the arguments that they've made here, that is, that EPA must, at the end of this period, make a decision between A, B, and C. You don't get to choose D, which is to do none of the above. If an EPA fails to do that, it must do so immediately. The consent decree would not interfere with that at all, with that kind of argument, would it? That's right. If the North Dakota District Court concluded that that argument was parliamentary and dismeritorious, then that court could issue a different court order and have it be under the court order's support, and it might be more stringent than it would be. Right. It might be a contradictory, not inconsistent argument. One of them just says that the Sierra Club and NRDC won't sue if it is done within another three years. That's all they can't do. They can't object to the fact that it does something within that period. That's right. And to make this concrete for the court, let me remind the court of what's going on with North Carolina, which also, at its own district court case in the state of North Carolina, intervened here and decided not to become an appellant. Instead, they went back to the district court in North Carolina and asked the court to set a briefing schedule and a remedy. We admitted liability on their section 75604 deadline suit. We did make the argument that a factor in the reasonableness of the remedy that that district court should adopt is the consent decree here and the deadlines that EPA is already endeavoring to meet. But we're not denying that that court has the authority to issue a new order if it finds that North Carolina has a meritorious claim. So if there's no suits, for example, if there's no other suits, then you follow along with your settlement with the Sierra Club, and the time frame is correct. That's right. But if there are other suits, you run the risk that in settling only with Sierra Club, you still have all these other states out there that could file multiple suits. That's right. And our hope is that any other courts that look at this question would recognize the regulatory context in which this arises and take into account how that affects the reasonableness of particular deadlines. Now, our submission to the district court here was that deadlines in 2017 and 2020, only if the states elect 2020. But a deadline in 2017 was reasonable here because that's when the data requirements comes online. That rule set a deadline in January 13, 2017, which was just passed, for states to submit their data. The states have submitted their data. The EPA is working to make designations based on that data. It's the reason that the consent decree here is big here. It's highly doubtful whether the states will be able to get designations out of EPA any earlier than December 31, 2017 anyway. EPA wants to make those designations. But just to be clear, as he pointed out, it is made objection when you get to it. It's not which one designation, which may be discretionary. It's to make a designation within a certain deadline. So it's the unreasonableness of the negotiated deadlines that he's objecting to, right? Let's look at some facts. Also, if a different court, I mean, you have these deadlines with the Sierra Club. If a different court were to look at this and say, well, of course, we're now way beyond the deadline that you already missed, and there's been multiple extensions out in the Sierra Club consent decree and imposed a shorter deadline, then you'd have to figure out what to do with that, right? I think EPA runs that risk. But the district court would have to do that based on balancing of all the factors. And that's our point here. This is an abuse of discretion standard. The district court could see all of the different factors, could take account of the context, and impose a deadline that it thought was reasonable. I'm still missing a point here. The administrator had a certain amount of time to do one or two. And if they don't do it, they do three, which is make everything unclassified. And then the administrator could have followed precisely those acts without any additional time that they were given by the legislature. They did not go back to the legislature and ask for a modification of the statute. So the administrator could have done it, but didn't want to do it that way. Instead, chose to move across the deadlines and do some more classification. But clearly, the administrator could have, on the date required, take care of the classifications they could and keep the rest of the majors unclassified. That puts the administrator in a position that persists to do something other than the legislation. And we're certainly having a lot of trouble trying to decide the balance of power between the legislature and the executive today. But having said that, there is the idea that when the legislature says something, and completed the statute, the administrator could have complied just by, at the end of that date, having the rest of the land considered unclassified and go ahead and do the bridge. The administrator just chose not to do that. And they've got a case. I don't see why we shouldn't tip it over. I don't see why the administrator wasn't wrong in complying when he could have complied, but didn't. The administrator was wrong in not complying. That's why Sierra Club had a meritorious merit that we did not contest. All you're doing is giving more time. The administrator, with a stroke of pen, could comply today. Well, let me... What if you gave the administrator until P tomorrow to get the designation? It could be done, right? No, it could not. Because the act itself requires a form of commentary. If the administrator wants to be the different designation than those in the states proposed... But that's the other factor. If the administrator would be well advised to approve what the states have proposed, then it could make the deadline by P tomorrow. I guess that it would all be back to you right here arguing about whether those designations were based on reliable data. I won't say it wasn't any case discretion. It was a statutory violation before DTA's weight. But given the DTA's dead weight, the question is, is it feasible, for example, for the coordination of the order requiring the administrator to have it by P tomorrow? And this board did a lot of research into the environment set in this form. However, we don't express it to determine based on all the decreasing factors what might be a reasonable deadline. If we said that the deadline means the deadline, then we would just send it back to say, enforce the deadline, have the EPA go ahead and have the rest of the country decide it is unclassified. It isn't a question of deadlines. It's whether it's within the executive to do exactly the opposite of what the legislation said and say, no, we want deadlines. Why should we put our stamp approval on one another? Respectfully, Judge Ross, we are not saying that we, the executive and the current party from the legislature should decide what the deadline should be. But this board, in many cases, cited our research to be a question that the English Institute has missed a deadline, but that distinguishes between that violation and the remedies for that violation. And they don't ever give the district court's discretion to set an appropriate remedy for a violation. And you're not here today, well, thanks for making it this time, but you're not here today asking us to rule on the merits of Sierra Club's claim. You're here in connection with the final consent decree that the court issued. And those are two different things. That's why we admitted that these are the merits we're asking the district court's discretion to give them a remedy that would be in agreement with them. Thank you. Good morning. May it please the court. My name is Zach Babish. I'm here on behalf of Sierra Club and NRDC. Let's start with I want to address a conversation that just happened here about whether or not it would be feasible for EPA to just deem the entire country unclassified and to move on about its business. Section 107D contemplates three types of designations, attainment, nonattainment, unclassifiable. It does not say that there's attainment, nonattainment, and a default. What it says is that there are three substantive types of designations. For EPA to be able to designate an area as unclassifiable, it would have to make a determination as to that area as being there is insufficient information for them to determine one way or the other. That is not something that happens as a default because that is a substantive designation. It's an agency action. It would be reviewable in a court of appeals. Well, you would do it in a challenge case, right? Sure. And it would be EPA. I might also have a discretion to say, if we don't have time, if corporate orders do this by tomorrow and we don't have time, we'll just deem everything unattained. You won't have an objection, but the state's will, right? So I think we have a default here. It's likely to be back in court quickly with a claim that, you know, is arbitrary and capricious. In a situation in which EPA was compelled to issue a default designation. Well, compelled to issue some kind of a designation. Namely, you're saying that you have to choose one of the three and you have to do it by this date. Yes, EPA would be in that situation because of the arbitrary and capricious thing. Which I think would be contrary to the statute and contrary to, oh, well, of course, it's not going to be contrary to certain general principles. If you assume an administrative law, then it would be compelled to act arbitrary and capriciously. But this is the problem. If Congress sets a deadline and EPA doesn't make the deadline, in other words, EPA has now violated the deadline patent itself. This is the problem, per se, for capricious. And Congress specified what the remedy would be when EPA violates a deadline. And that would be to enforce an act or to compel the agency to take a measure so that there's no indiscretion. Do you concede that the state of North Dakota can still go into the local court and answer a written mandate with respect to North Dakota? I don't know if you can see that statistically grounded, but certainly not. I'm not saying that we have to. But is there anything that, in your consent decree, that would bar North Dakota from doing that? You know, if you get invited to North Dakota as an intervener in the state district, you can't even consider a written mandate in there because you have an consent decree from the Northern District of California. No. And we, in fact, concede that it's much below. And they have a 7604 action already pending, right? In North Dakota. In North Dakota. So they're basically you in North Dakota. You are in California with that citizen action. They're in North Dakota with the same claims. You would invite all Americans, but you're going to just end up with a written mandate? Yeah. Yeah. So no, there would be no dispute there. So I might step on this deal, if you excuse me, because I'm beginning to be the briefs director, and I'm still confused. As I understand it, it's included in the school classifications, and that's what they're looking at. And if they don't fit in them, they become unclassified. But if the EPA then finds a classification, they can go into the unclassified and do some classification. Is that correct? No, it's not. They are just perfectly complicated. But when EPA comes up with a new national IP or equality standard, many things happen. Two things can happen. One, states are supposed to make recommended designations of EPA. And the section says that states are supposed to recommend attainment, non-attainment, or unclassifiable. Separate from that, EPA is supposed to issue final designations. It's supposed to figure out whether or not states get designations. And it's supposed to use its own discretion in determining what the appropriate designation would be. So it has to look at the information before it for every particular area, figure out the boundaries of those areas, and say, does the information before us say that this area has the error of this attainment standard, does it have error of this failure of this attainment standard? Or from the information in front of us, can it help each person's substance dissipation? So there is no default. I don't think there's a default in the sense that EPA can't judge. But then when they can judge, EPA then can instead go back to the person to make the decision. When EPA issues a designation, yes, they can say attainment, non-attainment, or unclassifiable. In fact, in the first trial of designations in the recent century, many of the designations EPA issued were in fact unclassifiable. So isn't it feasible that the district could have, it would make no difference, but the district court could have, even without a consent decree, could come to the conclusion that the forms what we can do, the EPA should do now. And then the rest would be unclassified. And in the future, the EPA could continue to do the work to make the classification. Then could that have been done? That's not necessarily just a form where you have to consent decree says developments for EPA to rectify its failure to issue designations. If the EPA issues unclassifiable designations for an area, it can revisit that later. But the consent decree doesn't specify the time periods based on what the subsystems you're going to have for designations will become. Are there some areas that they've already designated versus the classification? Yes. In 2013, they designated a number of areas to maintain. In 2016, they designated a small handful of areas unattainable. And in much larger areas, a number of areas unclassifiable or attainable. Unclassified at that time. Then the EPA would have a responsibility, if they did that, to continue to work on the unclassified to make the unclassified its subsystem. Not under Section 107.1. But Section 107.2 sets deadlines for EPA to make designations once they've done that, attaining the unclassifiable. EPA may, if it's on the court, re-designate it later. Or upon a petition from the state or public committee, decide to re-designate it. But the judge hasn't been satisfied. Does that answer your question? No? I'm sorry. Just one more. Thank you. Thank you. We have one more time. Thank you. I'll say it again. I'll say it again. I'll say it again. The consent decree before the court today is biased in terms of nature, matters, and capability. It does not exempt, in the same way, everything described in these three theaters, except for the appellant states. They are clearly covered by the terms of the consent decree. Further, the Department of Justice, Orster Club, and any of the briefs to this court argued otherwise. There wasn't a national consent decree that doesn't warrant EPA conduct with respect to the appellant states. Well, let me just posit if you are not successful here, I assume you're not going to go into court in North Dakota and say there's nothing we can do here in the Utah and North Dakota court. Because, of course, there is something it can do in your claim, correct? I don't know that, Judge. But I do know the problem. But you wouldn't want to throw that option away. I wouldn't want to do that. Nor am I. OK. The problem is practical. And to the states, to think our act is, the Supreme Court has clearly set up a model of cooperative federalism. The designations are the heart of the ability of the statute to function as Congress intended for the protection of nations or resources, a responsibility that Congress gave in the first instance to the states. The statute clearly says that this provision that we're talking about, the ability of North Dakota and these two states to challenge the consent decree in the district court in North Dakota, the Department of Justice was very unclear with you about that. Sierra Club was even more, was more clear. But that's not our concern. We have an offense due to the interactive ability to work. And we develop state implementation plans, regulations that speak to maintaining or getting back into compliance with the advanced standards. We didn't know what to do all of these years until we have EPA act on the designation recommendation made by the governor of our respective states. We're here today for that to be remedied. And the Supreme Court has authority to do that through vacating the consent decree and ordering the district court to think it's a reasonably diligent time for EPA to act on its plenary responsibilities. It is far more abbreviated than what the district court approved. Your bottom line is that we're here under abusive discretion standard, correct? And look at the consent decree. That's correct. And part of what the abuse involves is a misapplication of the interactive. It's just too long, the period that was permitted in the district. It's a system thing. It's a system thing. And that's a judgment you want us to make. We want you to demand the district court for Judge Hilton to make the decision. But we want you to vacate the consent decree. Why? Because it's clearly inconsistent with the statute on its face. And in that, the DOE, in comparison to us today, already told the court what limits you think should be placed on the exemption. Yes, Your Honor, in the district court, when Judge Hilton ordered us to attempt collaboration on remedy phase, because remember, we were granted intervention the same day that Judge Hilton found EPA violated the statute and failed to perform the discretionary duty, non-discretionary duty. We negotiated and Judge Hilton had us submit remedy briefs. We submitted remedy briefs to the district court, which asked the court to order EPA to, within one month of the district court's order, to issue determinations unclassified, where EPA thought that was appropriate. Again, we are not asking any court to substitute its judgment for the agency. But to come to a decision, that is, this court's language out of the Sierra Club case that Judge Hilton improperly relied upon, come to a decision. Obviously, the decision is, but come to a decision. So one month, the judge, with respect to making those unclassified determinations, and then we proposed two months to make the attainment or non-attainment determinations on the date of the order. And we think that's immediately reasonable. And that was rejected by the district court? It was ignored. Well, ignored because EPA, you couldn't reach a settlement with either Sierra Club or EPA. And the other parties in the district court opposed that, saying, no, we want to do what the consent decree says. So you wanted to order the consent decree, basically. We don't need a consent decree. We need the district court to order the agency to do what Congress, even long ago, intended for it to do. And to do it, and to make a judgment on how it was reasonable, but to do it with the guidance of this court that the consent decree is clearly not reasonable. Well, it puts us in a position of deciding whether it's going to be at 1 o'clock or 12 o'clock. That's the kind of thing that we sort of leave to the district court to manage the issue. Are you taking the position that the agency, as of now, could actually make that decision tomorrow? Absolutely. Absolutely. There was a framework that was instituted. It started with the state stringent timely, with the governor submitting designations with one year of EPA, setting the new standard. North Dakota, for example, when we're talking about our case, we have only had a state air quality health standard that's exactly the same one that EPA adopted in 2010. Why? Because we have a large number of large electric generation facilities. And we, with the EPA, on the go, developed our own extensive air quality monitoring network and full samples of air quality data to know what's in the air. And that data shows and was submitted to the EPA because we've been gathering it for years that these concentrations of sulfur dioxide in North Dakota's campaign air were below the standard. And that's great news. We're doing our job. All of North Dakota? All of North Dakota. That means we have the ability, and the governor did one year with the EPA, setting the new federal standard. We're in agreement with that standard. We're protecting the health and welfare of the citizens of North Dakota. We're entitled to that designation. Why? Because it allows us to balance environmental protection with economic development. And that's why we want this designation. The problem with the consent decree, it deprives us of that designation. EPA has a consent decree until 2020 to do that. They have until 2020 to do what the statute requires them to do in 2013. Why should we have to wait seven years for what we know to be the case today? If the EPA agrees, based upon the data, yes. Right? If they disagree, then we have an ability to use an initial review provision, section 307, to dispute that. We don't think that'll be necessary, but they need to come to a decision. There's no reason that they have offered, nor are we aware of any, that prevents them from doing it. They're just doing it because they did a different deal with it. And is it also, well, I don't know how all the rest of the states are, but if there's some states that are different from that, that'll take more time, then you would want, there's only one order she's going to enter. What would be the case of those other states if they are not in the position of your state? Well, if you're talking about North Dakota, the record demonstrates that the other states have good justification as well. We're not the only one in the country that has extensive air quality monitors. So there are other circumstances, and I don't have enough time to get into them, but the issue is, is if EPA looks at that data and says, I can't come to a conclusion, Congress won't want to do it. And then there is a means by which the state or EPA can redesignate that later after they have that discussion. Thank you. Thank you all for a very extensive briefing, and very helpful, and also for the arguments this morning. Sarah Kluppers of RIT and the State of North Dakota has submitted their research.
judges: Wallace, McKeown, Bybee